We'll call our next case in Re Friedmans. May I please the court? Good afternoon. My name is John Demme. I'm with Stevens & Lee, and we represent the appellant, the Friedmans Liquidating Trust, in this case. Your Honors, I'd like to initially reserve three minutes of my time for rebuttal, if that's okay. Thank you, Your Honor. Your Honor, we believe that this appeal represents a very straightforward case. I'm glad you think so. I do think so. It represents, in our view, a limited set of undisputed facts. The facts were presented to the Bankruptcy Court on stipulation, so there's no dispute there. And this Court's review of the matter, we believe, is a de very straightforward, because we think the statute is unambiguous. And you practice bankruptcy law? I do. Would you tell me what is your view as to the phrase, preference period? My view as to the preference period is that it is the period, well, if you're dealing with non-insider transactions, that is a transfer to somebody, an entity or a person that's not an insider or the debtor, you're talking about the 90 days immediately preceding the commencement of the bankruptcy case. Okay. And what's the policy behind the whole concept of preferences and being able to avoid them when they occur during the preference period? Well, the policy about the avoidance of a transfer that is labeled as a preference is that a transfer is made by a debtor as the debtor is going into bankruptcy. And the 90-day period is the period of time that Congress selected as the right period of time to look at. But those transfers are somehow suspect. I'm telling you what I believe Congress's intent and its conception of the policy behind the preference statute is that those transfers, unless there's a reason to not avoid them, and you might get into issues about whether or not the trustee or a debtor in possession, whoever's bringing that suit, can make out a prima facie case. And then you're also dealing with issues of defenses that are set forth primarily in Section 547. So the antecedent debt, the payment on account of an antecedent debt is avoidable, recoverable, because that person got something that perhaps, that other people didn't get. But then when they give new value during that period, they've basically, they've helped the debtor. Correct. That is absolutely correct. And so they get the benefit of that. That is correct. If there is a preferential transfer, the theory is that that preferred, that creditor, that creditor is getting 100% payment when it's likely the other creditors will not. So we bring that money back into the estate and we redistribute that money to all creditors fairly. And if somebody then deals with the debtor and advances new value, then they, that undoes the preference basically. What's the policy that would say that a post-petition wage order that the debtor has sought and that the court has ordered, what policy does that further in terms of making that at all relevant to what happens in the preference period? I don't believe that the two concepts are aligned. And in this way, I don't believe that the courts, a debtor's thinking about bringing a motion to the court asking for a wage order and the court's consideration of that wage order has anything to do with the preference period or the analysis of preference claims. Okay. But you're trying to reverse the court's order. No, we're not trying to reverse the court's order. What I'm saying is the entry of the wage order has really nothing to do, there is no preference analysis that's done in connection with the entry of the wage order. Maybe I'm confused. I thought you were trying to overturn. We're not trying to overturn the wage order. Well, this is what I want to point out. You're trying to say that the money that was received during the post-petition wage order somehow enters into the preference analysis. Yes, and it does in this way, that the statute that we're dealing with, Section 547C4, says that, I'm going to shorten this a little bit, but it says that to be eligible to be new value, a shipment of goods or the provision of services must not be satisfied by a transfer or an otherwise unavoidable transfer by the debtor, meaning you can't get paid on it. At the petition date, there hadn't been a payment on the new value, but that new value that had been provided by Roth staffing in this case was in fact paid, it was paid post-petition by the wage order or pursuant to the wage order. Our view is that there's no distinction or there's no cutoff in time, in terms of the time when you analyze whether a transfer is a preference and whether a new value defense applies. So, under a plan, that creditor gets $2,000 and somehow you go back and say, aha, we will then reduce your new value by that and, you know. No, no, we're not saying that. Well, where does it end? It ends because under bankruptcy law, there is a specific provision of the Bankruptcy Code which deals with the situation your honor is positing and that is when does it end? Well, it ends because you only get paid on an allowed claim and under Section 502D of the Bankruptcy Code, which deals with the allowance of claims, you cannot have an allowed claim to the extent you owe the debtor or the estate money for a preference claim. So the preference liability and the application of new value or other defenses has to be determined before you have an allowed claim. You don't get paid under a plan until you have an allowed claim. So the situation your honor is positing, which is, well, we have a preference liability and perhaps potentially new value, but we're going to get something out of the plan, so you have to keep going back and rejiggering it, will never happen and never does happen in bankruptcy practice. Is there a basic fairness issue here, Mr. Demme? You've got Roth providing employees to your client's predecessor in interest. You've got them, meaning your client's predecessor, going to court and saying, hey, let us pay these people now or it's going to wreck the company. The court says, okay, and you want to say that that money is now money that should be used to take away the new value that was all given pre-petition. You don't see any problem with that, obviously, but walk me through the equities of that. I think there's a fairness issue, but I think it cuts against the way your honor's framing the question. So let me deal with it in two steps. One, fairness vis-a-vis Roth staffing, and then fairness vis-a-vis the estate, first, with respect to Roth staffing. When a debtor files a bankruptcy case, a debtor has a lot of things going on. There's a lot of creditors, lessors, lenders, various parties that the debtor has to deal with. The debtor never understands or rarely understands or rarely has the time or inclination upon the filing of a bankruptcy case to do a preference analysis. The debtor's not in the best position to know whether one of the parties that it's dealing with that it believes it needs to continue dealing with post-petition has preference liability or not. But that's not really the point of the fairness. Isn't it the point that from Roth staffing's standpoint that, oh, great, thank you, I got this pursuant to the wage order, and now you're suing me for a preference? And that's precisely the second part of that analysis, which is the party that's in the only most times and always the best position to understand what the preference issues are are the creditor, not the debtor. All the debtor knows is we've got to survive. We need certain services, goods and services to survive. We believe based on our business plan that this necessity exists, and we need to pay these people to induce them to continue. Those are the people that know whether they have liability. Well, aren't you very arguing against your own interests, because you are acknowledging that, indeed, the whole wage order is a very different animal and for different reasons, and the pre-petition preference period has different underpinnings and a different rationale behind it. Has it not? No. I think that actually is very supportive of our position, which is the two don't intersect, so you have to look at them separately. And again, on the fairness point, it's raw staffing that's in the best position to know and can deal with that. Now, fairness as to the estate... Well, hold on just a second. Everybody's a big boy here, right? Your client, a serious player, had actually gone through the bankruptcy process once. It's not incumbent upon Freedman's before it goes and says, we want a special wage order here. We want to pay this. We want to pay Roths. It's not incumbent on them to know, and by the way, these are the receivables, these are the payments we've made. They've got a calendar. They know what 90 days is. They know what they've paid them. You're saying that that onus falls on the creditor. I'm not necessarily saying that the debtor doesn't have the ability to do that. I'm saying as a practical matter, it's almost impossible, and in practice, the debtors almost never do that because they don't have the ability to do it at that time. And so it's Roth staffing that's in the best position to deal with its own preference liability issues. If it has any, it can undertake an analysis and say, you know what, we don't have any preference liability because this was an ordinary course transaction or was a contemporary exchange, so fine. We'll just go forward and we'll receive payment, and no harm, no foul. The detriment to the estate or the fairness issue as it relates to the estate is that Roth staffing is not only shielding its preference liability, it's also receiving payment on the new value. The estate, the net effect on the estate is a negative. So the fairness to the estate, which again, the estate is not just the debtor. The estate is not the debtor. The estate is the creditors of the debtor. They're the ones that are being unfairly treated. That's an important point. And since the statute changes at some point and doesn't talk, in 547, they're talking about debtors, and then later they're talking about the estate or the trustee in 549, doesn't that actually indicate that you are talking pre-petition in 547? You're always talking in that statute in terms of the debtor, which is a pre-petition entity. Once you get post-petition, then the statute starts talking in terms of trustee and estate. It's clear that Section 547, to the extent it's talking about transfers by a debtor, can only talk about a transfer by a debtor, not by the estate. Once the petition has been filed, the estate doesn't make a preferential transfer under Section 548. It cannot because of the filing of the bankruptcy case. And then later, of course, you're talking about the estate having certain rights, for to collect on a preference. What do we do to make of language in 547C, like under this section, the trustee or debtor in possession may not avoid, under this section, a transfer? Does that not refer to 547 generally? May I ask specifically what section of C you're referring to? I didn't... 547C. Oh, just the beginning part. Thank you. Well, the trustee may not avoid under this section. It means that Section 547 creates a right for the estate, for the trustee or the debtor in possession, to avoid certain transfers made in that 90-day period. That occurred in the preference period. Transfers by the debtor that occurred in the 90 days immediately prior to bankruptcy. So when it's talking about under this section, that would be all of 547, including 547B, right? Well, 547B is the prima facie case for a preference. It's the element you have to show to show that a transfer by a debtor is a preference from a prima facie point of view. A preference, which by definition is pre-petition. Correct. Right? So, I just, I'm wondering as a matter, just a straight up statutory interpretation, if the same section uses the word transfer, and when it talks about it in 547B, it has to mean pre-petition. Yes. And then it uses the same word in 547C, and even references back and says under this section. Why would we start talking about the word transfer meaning something different, that is not pre-petition, but just any time? Well, because the transfer that's being referred to in section 547 is the transfer by the debtor. Initially the preferential transfer. When you look at 547C, it says the trustee may not avoid under this section a transfer. That's the initial transfer. Let me pause it. It talks about such transfer, right? Under C4 it talks about the extent that after such transfer, such creditor gave new value. Right. Doesn't that such transfer refer to a preferential transfer as described in 547B? Of course. Okay. So, if it's using the word transfer in that method in a way, why would we jettison the Well, there's a few reasons for that. One is that section 547C4 itself doesn't have any temporal limitations. Is that such? That such transfer? I mean, I recognize it doesn't have an in-hoc verba, but it seems to be saying when it says under this section and such transfer, does that not pull in 547B's 90 days prior to petition language? No. It does not. There are other situations under section 547 in which post-petition events are given effect and in fact must be given effect to determine whether or not there's preference liability. For example, section 547B5 of the Bankruptcy Code sets up as one of the elements of a preferential transfer that the transfer, the pre-petition transfer that's determined to be a preference, enables the creditor to receive more than such creditor would receive if the case were a case under Chapter 7 and the transfer had not been made and such creditor received payment on such debt to the extent provided by the provisions of this title, which means in shorthand that you have to see how the bankruptcy plays out and to see what distributions are going to be made to unsecured creditors to determine whether or not a preference claim lies. There are perhaps rare situations, but there are situations in bankruptcy where creditors, unsecured creditors receive 100% payouts. This Court has dealt with some of those cases. W.R. Grace is one example. In that type of case, there is no preference liability at all, and you cannot determine that until after the bankruptcy case is filed. There's also a case from this Court called Kiwi Airlines, which deals with the assumption of an executory contract. That's a different situation. But it stands for the proposition that you certainly must take into account post-petition events to determine preference liability in the basic holding of the bankruptcy court. Except with the executory contracts, it's different. It's different than payment on account of an antecedent debt. Clearly, those two things are different. All I'm positing is that case stands for the proposition that you must take into account a post-petition event, regardless of what it is, to the extent it's relevant to the preferential transfer. And an assumption under 365 must occur post-petition. So you have to take into account post-petition events. And what the bankruptcy court's holding was, in essence, was you stop the analysis under Section 547C4 at the petition date. And it said so because of this Court's decision in New York City Shoes in 1989, which we have said, and you've read the briefs, that it's not what the statute says. I have a question. Just very quickly. Yes, no, take your time. What is the perspective of the judge who approves the wage order like this? I mean, you talked about fairness, which is implicated here. The debtor does not have, the debtor who's facing bankruptcy does not have the perspective that perhaps, as to how other creditors are lining up. What kind of questions does the judge ask? It sounds like it's the job of a judge to have some of those perspectives in deciding whether to approve an order. And one of the striking things about your argument is that despite the fact that there's been a judicial approval of the payment of these sums, they actually impair, if you will, the exposure of, in this case, of raw staffing, even though they've gone to court and they've got the approval. Seems very odd. Well, I can't tell you what went through the mind of Judge Sanchi. In this particular case, I'd be speculating. How is a judge supposed to approach a question like this? What kind of questions does the judge ask? The judge in these situations, when you deal with wage orders or other situations in which necessity is posited as a reason to make payments on pre-petition debt, which occurs quite regularly in larger Chapter 11 cases. The court's focus in those situations is not on what's happened pre-petition, except to the extent that the debtor shows that this supplier or this employee or whomever is necessary for the business going forward. And sometimes you would show that by saying that they provided services pre-petition for a year and we really need them to continue on. So the judge's point of view is really from the perspective of the estate. And in terms of maximizing the value of the state, which sometimes necessitates continuing the operations of the estate as it existed pre-petition, which includes continuing with certain employees, consultants, other vendors and suppliers. So the court's mindset is not on preference situations. And I still go back to- But with that case having been made, why should it increase the preference liability of somebody like Roth? It doesn't increase their liability. Their liability remains the same. And there may not be preference liability. New value is a defensive purpose. As of the, I thought it was undisputed, maybe I'm wrong about this, but I thought it was undisputed that as of the petition date, there was new value and you could put a dollar number, a dollar and cents number on it. And your position is that's true, but once we got the wage order, the money we got, the money that went out the door on the wage order, that offset the new value. And they get sued for preference. Yes. The example, it doesn't increase the liability. Let me give you an example that I'd like to give you. It's a preferential transfer of $100. Then a provision of new value of $100 and then a subsequent payment. Forget when the payment occurs of $100. If that $100, the original liability is $100. The preference liability is $100. Whether you have a prime facie case for that $100 or not is not determined in the context of a wage order. Whether there's a defense to that preferential transfer of $100 is not determined in the context of the wage order. But the later payment doesn't increase that $100. No, but then. But it reduces the new value. I mean, I don't, you've left like a piece of the equation out of there, right? There's $100 in a preference and then I give you $200. So now I'm up on it $100. And then there's a petition. And your assertion is that based on a wage order where we sent like $300 out the door, now the fact that pre-petition, we owed them money. Now, even though there's a court order telling us to pay these people, and they presumably think, okay, we're getting paid. What you're really saying is, no, you're not getting paid. You're only reducing what we view as a pre-existing debt. So now you owe us more money. That, you know, I don't want to quibble about the terminology, but it sure feels like who owed who what changed. The only real change is in that effect in the estate, which decreases the amount of funds that can come into the state from that 90-day preference period. That's the only thing that changes. No, some dramatic changes for Ross. Before they've got a claim, now they've got a debt. Well, but the net effect on the estate is to the decrease. But it's not necessarily to Ross staffing. As I said, that first $100 payment may or may not be a preference claim under the statute, and new value may or may not apply under the, or other defenses under Section 547C, I misspoke when I talked about new value. But other defenses may apply, but it might not increase their liability at all. And it's just not a consideration at the time of the wage order. All right, we'll hear from you on Rebun. Thank you. Good afternoon, your honors. Brad Blakely, appearing on behalf of Ross Staffing Companies, and if I may, I'd like to focus on bankruptcy, plain meaning in the bankruptcy code. Because I think that if we focus on the policy, it's a no-brainer for us. We start with the premise that the bankruptcy area of law is highly complex and interwoven, and that it requires, when we employ our analysis of plain meaning analysis, that we have to use a very fine brush when approaching our subsection, subsection C4, and- Well, C4 doesn't talk about, here's C4B, on account of which new value, the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor. But it doesn't say when that transfer needs to have been made. It doesn't. So how does plain meaning help you? It doesn't contain this magic language as of the petition date. But it does incorporate a temporal restriction, and it's vis-a-vis the 547B4. And I'll show you how it does it. And I think we just touched on it just briefly. Well, but that's the initial transfer made on or before 90 days. And that's correct. But if we read through, turning to the first part of C4, we look at after such transfer. And that such transfer- Correct. Okay. And then we get down to, and this is within the same sentence, within the same code section, that transfer, the word transfer is used. And so that definition that was employed under B4, 547B4, carries through to C4, at the start of C4, and then through to C4B. But that only, after such transfer, and that transfer means the one in the 90 days, on account of which Nevada did not make an otherwise unavoidable transfer. But that's a second transfer. That's a second transfer. And that's not defined to have been within, that doesn't say it has to be within the 90 days. But we're still using the word transfer. And that word transfer carries through that provision, unless Congress says we're going to use some other type of transfer. We're going to redefine it. If we're, and we're talking about a canon here, we're talking about if we're using, repeating the same word throughout the same sentence, that word remains, retains that definition. Why, why did Congress think it was necessary to be explicit about time limitations in some subsections and not in others? Yeah. Usually when we're interpreting a statute, and something happens over and over again, and then it doesn't happen, we say, oh, that was on purpose. We shouldn't, we shouldn't notice that in some subsections, they're speaking specifically. Because, because the other code sections you're referring to, perhaps C3 or C5, it makes it unintelligible if we don't include a very specific reference to the petition date, for example. So, so in, in using that language, you have to, to make sense out of that and you have to use that definition. Although. And here, it's quite simple. You said before that if you talk about the policy, it's kind of a slam dunk for you. But your opponent talked about replenishment of the estate. And, you know, we were talking about fairness. Well, is it fair that someone who is a pre-petition creditor and gave new value, pre-petition, then gets more paid back on account of the debt? And other creditors, you know, didn't, didn't get anything? Right. And he gets something? I mean, that always bothered me with critical vendor orders and wage orders, that you're in effect kind of, you know, crossing your fingers and paying people on account of their pre-petition debt. And nobody else is getting paid. Why shouldn't there be a certain re-ratcheting or, or re-looking at what happened pre-petition in an attempt to equalize? Yeah. Judge Sanche, it was up to the bankruptcy judge at that time. We're dealing with a Chapter 11 case, and not a Chapter 7 liquidation case, but a Chapter 11 case where the value in the estate is dependent on the continued operations. Oh, I know the arguments for it. And there's a very good argument for doing it. But, bottom line, it does give someone more than someone else. It does. But, but the difference is, is that my client stood by the debtor post-petition, provided services to the debtor that enabled that debtor to either reorganize or Importantly, you mean stood by them pre-petition and gave them new value? No. But post-petition, under the wage order, continued to provide services to the debtor and benefited the debtor, unlike other creditors that didn't provide those post-petition services. Presumably, the wage order, the debtor only goes to the court for the wage order when they've called Roth and says, send in the people. And Roth says, you gotta be kidding me. We're owed, you know, all this money. We, you know, you said we'd get paid and then we gave you new value. We didn't get paid, we got burned. I mean. And that's, and that's, and that's why Roth, or Roth, excuse me, is deserving of additional preferred treatment, if you will, post-petition. Because they committed to, to continue those services when they didn't have to. They weren't obligated to provide those post-petition services. If I could just take one step back though, in terms of this plain meaning issue. Because it, it, we need to start off with, kind of a very, close examination of interpretation of the words of transfer. Then we broaden it to our, our other subsections, the surrounding subsections, subsection C1, C2, C3, C5. All of those admittedly by, by appellant all relate to pre-petition events. And then we take a- Well, but there can be post-petition transfers. And, and in fact, 549 talks about post-petition transactions and talks about a transfer made after the commencement of a case. So a transfer clearly isn't just limited to a petition, is it? And that, that gets to my point, your honor, is that we have very specific code sections, 547 dealing with pre-petition transfers, 549 dealing with post-petition transfers, and we need to recognize the different code sections and how they relate to one another. Well, but interestingly, under 549, this is probably an unavoidable transfer post-petition because it's ordered by the court. So this might fit within C4B, on account of which Nevali did not make an otherwise unavoidable transfer to or for the benefit of such creditor. Because 549 talks about a post-petition transfer as being not avoidable if it is ordered by the court. That might actually apply here, might it not? My understanding here, your honor, is that we've got an order of the court that says bankrupt debtor, you're permitted to pay this pre-petition service, this pre-petition claim, okay? So that's an authorized post-petition payment. And so it's not recoverable under 549. So therefore, that doesn't protect us in this setting. What do you do with the Loggin Brothers case? Judge Weedoff. Judge Weedoff's a very well-respected bankruptcy judge. Yeah. We're dealing with a very different set of circumstances there, though, because we're dealing with a post-petition return of product. And the measurement under that case is, well, what value did we get post-petition? We didn't, or pre-petition, rather. We didn't get any value because that inventory was returned by the debtor post-petition. So it's almost like it didn't happen. Almost like it didn't happen, that's correct. You want to tell us what exactly otherwise unavoidable transfer means? Yeah. Well, and this is what's interesting, and it's a case, I think, that was cited by appellant. This Pillow Text decision goes into great detail. It's from Delaware, talking about, well, what is an otherwise unavoidable transfer? An otherwise unavoidable transfer that pays this new value. And in the Pillow Text decision, it talks specifically about what is otherwise unavoidable, and it deals directly with C1 or C2, and not dealing with what we have here, a post-petition transfer. So you're talking about payment and otherwise unavoidable transfer. That transfer is either protected through an ordinary course of business defense or a contemporaneous exchange defense. Those are pre-petition events, not post-petition events. Anything further, Counselor? The other items I'd like to point out is just simply what is it, generally, what is the statute of limitations, and how does that relate here? Again, we're talking about 547. It's all focused on this pre-petition event, and then we have this line of cleavage that Justice Holmes set forth, 1911. We talk about pre-petition events. We've got this dividing line of the petition date, and then post-petition events. Now, with respect to the policy issues the Court touched on, quite simply that Roth is not getting what it bargained for through this wage motion. The wage motion is represented by the debtor who initiated this lawsuit. They said, you're entitled to special treatment. Judge Sanchi, give this creditor special treatment because they're going to provide us with post-petition services unlike other general unsecured creditors. They deserve this special treatment. And nobody told you there were some strings attached. That's correct. Did they, were they obligated to do that? To say, oh, but guess what? If you get this, we're going to use it in the preference calculation. Well, certainly not obligated to do so, but at the end of the day, we're not getting what we bargained for because they're trying to take that new value back from us. Well, Mr. Demme will speak for his claim, but isn't the response to that, we're not trying to take anything away from you. You had a preference. I mean, this is all part of an overall effort under the Code to treat people fairly and make sure that nobody's getting specialized treatment. And there's no unfairness to Roth's staffing. They just have the fact that they were getting services and getting paid during the time that the estate is reigning instead of pre-petition freedments just puts them on an equal footing. It's not an unfairness. That's a... in keeping with the Code. But the problem that we see, though, is that where's the special treatment then that was pronounced through the motion, the wage motion, said we're going to give them special treatment, but where is it if we take out that new value? Well, I understand the argument from appellant to be, look, at that stage in the real world, nobody knows who's owed what, except maybe your client knows. You know, the whole world is falling in on freedments. They're running around trying to keep the ship from sinking altogether. They don't have time, and nobody in actuality goes around and says, you know what? I think there's a little bit of a preference here I got to be worried about. That's not even on the table. It's just we need these people now, and we'll sort it all out later when we've got time, when things are stabilized. What's wrong with that argument to the practicalities of the way a debtor has to handle things in the emergent situation of insolvency, bankruptcy? Yeah, but through the wage motion, Your Honor, the debtor didn't say, I'll give you payment, but I'm going to take away your new value defense. Sure, because what they say is they're not even thinking about a new value defense. They're not even conscious. It's not even in anybody's mindset. All they're thinking is, we need staffing. Let us pay this person. And when it turns out later, you know, when the dust has settled a little bit, oh, there's some new value here. At that point, they say, it's not inappropriate, and it's not unfair to say, look, this should be offsetting some of that. We paid him money. And the fact that we paid it to him after the line called petition doesn't mean they didn't get paid. But doesn't that play into my argument that we should have a dividing line on the petition date so we don't run into this confusion, do you have new value, don't you have new value? We divide it. We've set out that new value on the petition date. You get it or you don't get it. Not after the fact. A year later, two years later, now five years later, four years later. It makes sense to make a determination as to what new value qualifies on the petition date so these post-petition events don't impact that new value. Well, that would be fine, except you got dollars and nobody else did. And while you get the money in hand, you can complain about the reduction of new value, but you still got money. But we get dollar for dollar reduction on our new value. And so, in essence, we didn't get any special treatment at all through providing post-petition services. Thank you, Your Honors. Thank you. Buddle? A question about the case law. The case law is pretty consistent. The post-petition new value doesn't count to undo a prepetition preference. Why should the logic there not apply here to say that post-petition payment doesn't impact? Post-petition, well, it's really not post-petition new value. It's simply you're now doing business with a debtor in possession. And bankruptcy law is such that when you do business with a debtor in possession, you don't have a prepetition unsecured claim. You have an administrative claim that, in a Chapter 11 case at least, will get paid 100 cents on the dollar. So you're a completely different situation in that respect. Really? Won't the argument that you're making here, the rule that you want, deter people from doing business with bankruptcy estates? No. And I say that. And we're beyond the record a little bit. But I'm going to respond to Your Honor's question as to why I think that's the case. And it also relates to a couple of points I wanted to make in response to my colleague's argument. This case arose as an involuntary bankruptcy case and then was converted to a voluntary Chapter 11. And the wager comes up in the context of a first day or early in the case motion. And it's not just a motion that relates to Roth staffing. It relates to a whole host of different folks. So to your question, Judge Lipitz, about what's in the judge's mind, the judge is not focused on Roth staffing. The only party that really can focus on Roth staffing is Roth staffing. And I heard the counsel say that they were not getting what they bargained for. Well, there's nothing in the record about that on a factual basis. But clearly, if that phone call that Judge Rendell referenced comes into Roth staffing and Roth staffing takes a look at its situation, it can say, we'll do this, but got to waive the preference claim if they think there is one. Again, they're the one in the best and sometimes only position to deal with that issue. So in terms of deterring creditors from dealing with a debtor in the post-petition world, it's a completely different analysis than it is in the pre-petition world. In part because you do get an administrative claim when you deal with a debtor post-petition, whereas if you think a debtor is teetering on the verge of bankruptcy pre-petition, you might not want to deal with the debtor because you do have some real significant concerns about getting paid. I don't know if that answered Your Honor's question totally, but that's my answer at this point, save for some follow-up. And that's all I had, Your Honor. Thank you very much. Thank you. All right, counsel. The case was Willard. He was taken under advisement.